UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. ROBERT L. BARRACK ET AL.                    CIVIL ACTION

VERSUS                                          NO. 12-2716

PAILET, MEUNIER & LEBLANC,                      SECTION "B" (2)
L.L.P. ET AL.

## ORDER AND REASONS ON MOTION

The court previously deferred the motion of the plaintiffs-in-exception, Pailet,
Meunier & Leblanc, LLP, and Kenneth C. Pailet (the "Pailet Parties"), for Sanctions for
Failure to Comply With Order of the Court Dated August 28, 2013 and Motion to
Compel Production of Documents from the defendants-in-exception, Dr. and Mrs. Robert
L. Barrack ("the Barracks"), Cathey Ann Grossman and Jonathan A. Barrack as Trustees
of the Barrack Children's Irrevocable Trust ("the Children's Trust"), the Toby N. Barrack
2011 Irrevocable Trust and the Adam J. Barrack 2011 Irrevocable Trust (collectively the
"Barrack Parties"). Record Doc. No. 25. The purpose of the deferral was to permit
additional briefing and require the Barrack Parties to submit to me for in camera review
the materials they are withholding from production based on the attorney-client and
accountant-client privileges. Record Doc. Nos. 64, 71.

The Pailet Parties filed a supplemental memorandum in support of their motion,
Record Doc. No. 78, supported by excerpts from the deposition testimony of Dr. Barrack

and Mark Carlie, C.P.A., and documentary exhibits, including the Barrack Parties'
original and supplemental privilege logs.   The entire transcript of Dr. Barrack's
deposition is in the court's record as an exhibit to the Barrack Parties' memorandum in
opposition to the Pailet Parties' motion for partial summary judgment.  Record Doc.
No. 50-2.  I have reviewed that entire transcript.

The Barrack Parties filed a response memorandum, Record Doc. No. 81, which
includes an excerpt from the deposition of Rita Schwager, C.P.A.  They also submitted
to me for in camera review a compact disk containing all of the withheld documents,
which I have reviewed in its entirety.  The Pailet Parties received leave to file a reply
memorandum.  Record Doc. Nos. 83, 84, 85.

Having reviewed the pleadings, the submissions and arguments of the parties and
the applicable law, IT IS ORDERED that the motion is DENIED, for the following
reasons.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Ken Pailet, a certified public accountant, and the Pailet, Meunier & Leblanc firm
performed accounting and tax preparation services for the Barrack Parties for many years
until the relationship was terminated in November 2010.  Ken Pailet was also trustee of
the Children's Trust from 1994 until mid-2011.  In January 2011, the Barrack Parties

hired an accounting firm located in St. Louis, Missouri, where the Barracks had relocated and lived for about five years, to prepare their 2010 tax returns.

On July 3, 2012, the Barrack Parties opened an Accountant Review Panel in Louisiana, which is apparently a prerequisite to a lawsuit for accounting malpractice under Louisiana state law. Their request for review alleges that, "'[i]n 2011, an audit was conducted, which discovered numerous errors, omissions, contractual breaches, negligence and breaches of fiduciary duties by'" the Pailet Parties in performing accounting, tax and related services for the Barrack Parties until 2010. Pailet Parties' supplemental memorandum, Record Doc. No. 78 at p. 4 (quoting Accountant Review Panel request). The request for review asserts that the Pailet Parties' errors required the Barrack Parties to amend their tax returns for 2004 through 2009 to correct those prior erroneous filings, which caused them to incur professional fees, additional taxes, interest and penalties. Id.

The instant federal action consists solely of the Pailet Parties' peremptory exception[1] of peremption under Louisiana law to the Barrack Parties' request for an Accountant Review Panel. The Barrack Parties removed the exception from Louisiana

---

[1]"An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." La. Code Civ. Proc. art. 921. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." Id. art. 923. "The objections which may be raised through the peremptory exception include but are not limited to the following: (1) Prescription. (2) Peremption. . . ." Id. art. 927(A).

3

state court to this court based on diversity jurisdiction.  Record Doc. No. 1.  The Pailet Parties argue in their exception that the Barrack Parties' claims for accounting malpractice are perempted under the applicable statute because the Barrack Parties failed to open the Accountant Review Panel "within one year from the date when the alleged act, omission, or neglect is discovered or should have been discovered."  La. Rev. Stat. § 9:5604(A).  If the Barrack Parties knew or should have known of the Pailet Parties' alleged errors more than one year before the Barrack Parties requested the review panel, or before July 3, 2011, their accounting malpractice claims are perempted.  Id.

The Pailet Parties' motion to compel and for sanctions seeks discovery of materials that the Barrack Parties have withheld from production based on the attorney-client and/or accountant-client privileges.  La. Code Evid. arts. 506, 515.  The evidence submitted in connection with the motion and Dr. Barrack's complete deposition testimony establish the following facts relevant to the motion.

In January 2011, the Barrack Parties hired the Stone Carlie accounting firm to prepare their 2010 tax returns.  During the months before the April 15, 2011 tax return deadline, accountants Mark Carlie and Rita Schwager of Stone Carlie communicated with and gathered from Ken Pailet and his partner at Pailet, Meunier & Leblanc, Benny Hausknecht, information and documents related to accounting services and tax returns that the Pailet Parties had previously prepared for the Barrack Parties.  Transmittal of

4

such information and documents from the Pailet Parties to Stone Carlie continued into the summer of 2011.  Record Doc. No. 81-1, Barrack Parties' Exh. 1, deposition of Rita Schwager at p. 65.

By February 23, 2011, Schwager and Carlie had seen the Barrack Parties' 2008 and 2009 tax returns and knew that some royalty payments from Smith and Nephew to the OrthoPartners partnership had been treated as capital gains on the returns of the Barracks individually, OrthoPartners and the Children's Trust.  OrthoPartners was a partnership whose partners were Dr. and Mrs. Barrack and the Children's Trust. OrthoPartners received royalty payments from Smith & Nephew, PLC with respect to a medical device that Dr. Barrack had developed.  Smith & Nephew "is a global medical technology business." http://www.smith-nephew.com (visited on Jan. 8, 2014).  In 2009, the Barracks created OrthoPartners, LLC, in which Dr. and Mrs. Barrack were the sole members, to receive revenues that had previously been received by the OrthoPartners partnership.

In the course of gathering information to prepare the Barrack Parties' 2010 tax returns, Carlie and Schwager were trying to understand the tax treatment from previous years.  By February 23, 2011, they had not reached any conclusion about the propriety of the prior tax treatment.  Record Doc. No. 78-4, Pailet Parties' Exh. B, deposition of Mark Carlie at pp. 49-53, and Record Doc. No. 78-6, deposition exhibit 15.

5

Around March 7, 2011, the Barrack Parties hired Armstrong Teasdale, a St. Louis law firm, to work with the Stone Carlie accountants and provide them with legal advice in three areas:  (1) the income that had been received by OrthoPartners, LLC and the future of that entity, (2) a study of the expenses and deductions reported by OrthoPartners and (3) the tax nature of the royalties reported by OrthoPartners.  Pailet Parties' Exh. B, Carlie deposition at pp. 63-64.  The Pailet Parties argue in the instant motion that the second and third areas are at issue in the Barrack Parties' allegations of malpractice and their request for an Accountant Review Panel.

Stone Carlie's and Armstrong Teasdale's consideration of the third category of advice continued as of April 4, 2011.  Pailet Parties' Exh. B, Carlie deposition at p. 75.

After the April 15, 2011 income tax return filing deadline passed, Carlie and Schwager "were beginning to identify a number of issues with prior filed returns" for the Barrack Parties, so they communicated with the Pailet Parties to obtain from them any prior returns that Stone Carlie still did not have.  On May 2, 2011, Schwager requested specific, additional tax returns from the Pailet Parties.  Id. at pp. 84-85 and Record Doc. Nos. 78-7 and 78-8, Carlie deposition exhibits 19 and 20, respectively.

The Barrack Parties had not made any decision regarding whether to file amended tax returns by May 2011.  That decision was made later in 2011, after independent accountants and attorneys for the Barrack Parties had collected, reviewed and evaluated

6

large amounts of data.  Record Doc. No. 50-2, deposition of Dr. Robert L. Barrack, at pp. 113-14.

After Stone Carlie had been hired, the Barrack Parties retained another law firm, Waller Lansden Dortch & Davis, of Nashville, Tennessee, which had represented them a few years earlier in connection with a breach of contract matter, to provide additional legal advice.  In April 2011, tax attorney Michael Yopp of Waller Lansden, Carlie and Kell Riess, an attorney in Louisiana who had previously worked with the Barracks, were advising the Barrack Parties regarding the disposition of a settlement with Smith & Nephew.  Id. at pp. 105-07.

Yopp retained Robert Whisenant, C.P.A., who began an in-depth analysis of the Barrack Parties' prior tax returns.  Whisenant completed his analysis, Yopp reviewed it and the Barracks were made aware of the results in August or September 2011.  After receiving Whisenant's results, the Barrack Parties conferred with their attorneys and accountants to decide what to do about the information.  The Barrack Parties decided in the second half of 2011 to file amended tax returns because of errors and omissions in the tax returns that Whisenant's analysis had identified.  Stone Carlie prepared the amended returns.  Id. at pp. 113-16, 117-21, 129-30, 140-41, 143.

The documents that I have reviewed in camera are substantially consistent with the overall description of events provided in Dr. Barrack's deposition testimony.

II.   ANALYSIS

The Pailet Parties argue in their supplemental memorandum that the Barrack Parties have waived their attorney-client and accountant-client privileges as to the withheld materials, which have been identified by the Barrack Parties on an original and a supplemental privilege log, and that the materials are therefore discoverable because the Barrack Parties have placed their confidential communications at issue, so that the doctrine of at-issue waiver applies.   The Pailet Parties also argued in their original memorandum that the privileges were waived by the Barrack Parties' previous partial disclosure of some privileged documents and their failure to provide discovery responses and a privilege log by September 11, 2013, as previously ordered by the court.

A.   At-Issue Waiver

Resolution of whether at-issue waiver has occurred in this matter depends on two evidentiary burdens.  The first burden of proof relates to the Pailet Parties' exception of peremption.  The second evidentiary burden relates to whether the Barrack Parties have placed their privileged communications at issue and therefore waived their privileges as to those communications.

As to the first burden, the Pailet Parties argue that the Barrack Parties will bear the burden at trial of the exception to prove that their accounting malpractice claim is not perempted by showing that they did not discover facts sufficient to put them on notice

8

of their claims more than one year before they opened the Accountant Review Panel. The Pailet Parties acknowledge that they bear the second evidentiary burden to show that at-issue waiver occurred.  They contend that the Barrack Parties have put their privileged communications at issue because, in order for the Barrack Parties to bear their burden of proof at trial of the exception, the Barrack Parties will be required to introduce privileged communications to show when they learned of the alleged accounting errors.  In such circumstances, the Pailet Parties assert that the Barrack Parties have waived their attorney-client and accountant-client privileges and that the Pailet Parties are entitled to discovery of the materials as to which the privileges have been waived.

"Peremption is a period of time fixed by law for the existence of a right.  The right is extinguished upon the expiration of the peremptive period.  When the peremptive period has run, the cause of action itself is extinguished unless timely exercised." Rando v. Anco Insulations, Inc., 16 So. 3d 1065, 1082 (La. 2009) (citing La. Civ. Code art. 3458) (additional citation omitted).

"Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension.  As such, the . . . rules governing the burden of proof as to prescription apply to peremption." Id.

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.  An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity,

> excite attention, or put a reasonable person on guard to call for inquiry.
> Such notice is tantamount to knowledge or notice of everything to which
> a reasonable inquiry may lead.

Mims ex rel. Succession of Mims v. Lifecare Hosp., LLC, 1 So. 3d 660, 663 (La. App.

2d Cir. 2008) (citing Campo v. Correa, 828 So. 2d 502, 510 (La. 2002); Boyd v. B.B.C.

Brown Boveri, Inc., 656 So. 2d 683 (La. App. 2d Cir. 1995)); accord Amos v. Crouch,

71 So. 3d 1053, 1056 (La. App. 2d Cir. 2011) (citing Campo, 828 So. 2d at 510; Davis

v. Johnson, 36 So.3d 439 (La. App. 2d Cir. 2010); Mims, 1 So. 3d at 663).

"Constructive knowledge sufficient to commence the running of prescription

requires more than a mere apprehension that something might be wrong.  Prescription

does not run against one who is ignorant of the facts upon which his cause of action is

based, as long as such ignorance is not willful, negligent, or unreasonable."  L.S.

Huckabay, M.D. Mem. Hosp., Inc. v. KPMG Peat Marwick, LLP, 843 So. 2d 1186,

1191-92 (La. App. 2d Cir. 2003) (citing Cordova v. Hartford Accident & Indem. Co., 387

So. 2d 574 (La. 1980); Young v. Clement, 367 So. 2d 828 (La. 1979); Creighton v.

Bryant, 793 So. 2d 275 (La. App. 2d Cir. 2001)).

The Pailet Parties acknowledge that they ordinarily bear the burden of proof on

their exception of peremption.  This evidentiary burden requires them to show that the

Barrack Parties knew or should have known before July 3, 2011, facts indicating to a

reasonable person that the Pailet Parties had committed malpractice.  However, the Pailet

Parties argue that the burden of proof shifts to the Barrack Parties in the circumstances of this case.

"Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. . . .  If prescription is <u>evident on the face of the pleadings</u>, the burden shifts to the plaintiff to show the action has <u>not</u> prescribed."  <u>Rando</u>, 16 So. 3d at 1082 (citations omitted) (emphasis added); <u>accord</u> <u>Green v. Guidry</u>, No. 11-2466, 2012 WL 5507286, at *9 (E.D. La. Nov. 24, 2012) (citing <u>Rando</u>, 16 So. 3d at 1082); <u>Davis v. Karl</u>, No. 10-875, 2010 WL 3312587, at *6 (E.D. La. Aug. 19, 2010) (citing <u>Rando</u>, 16 So. 3d at 1083); <u>Wilhike v. Polk</u>, 999 So. 2d 83, 85 (La. App. 4th Cir. 2008) (citing <u>Lima v. Schmidt</u>, 595 So. 2d 624 (La. 1992); <u>Grant v. Tulane Univ.</u>, 853 So. 2d 651, 653 (La. App. 4th Cir. 2003)).

The Pailet Parties argue that peremption is evident on the face of the Barrack Parties' request for an Accountant Review Panel, which is the "pleading" that underlies the exception of peremption.  The Pailet Parties point out that the request for an Accountant Review Panel asserts only that the alleged accounting errors were discovered "in 2011," without specifying a date of discovery and particularly failing to specify that the discovery occurred after the peremptive date of July 3, 2011.  If the burden of proof on the exception shifts to the Barrack Parties, they must prove at trial that they did <u>not</u> have actual or constructive knowledge of the errors before July 3, 2011, which, the Pailet

Parties contend, would necessarily require the Barrack Parties to prove that they actually discovered the problems after that date.

The evidentiary burden to prove at-issue waiver of privilege becomes relevant at this point in the Pailet Parties' argument.  At-issue waiver occurs under Louisiana law when a party places privileged communications "at issue," which means <u>more</u> than simply that the client's communications with his lawyer or accountant have been referred to in litigation or that they may be relevant to the subject matter of the litigation. "Placing at issue" means that the waiving party "'pleads a claim or defense in such a way that he will be <u>forced inevitably</u> to draw upon a privileged communication at trial in order to prevail.  Consequently, he places at issue and waives his privilege as to communications on the same subject under his control.'"  <u>Dixie Mill Supply Co. v. Continental Cas. Co.</u>, 168 F.R.D. 554, 555-56 (E.D. La. 1996) (quoting <u>Smith v. Kavanaugh, Pierson & Talley</u>, 513 So. 2d 1138, 1145 (La. 1987)) (emphasis added); <u>accord</u> <u>Trestman v. Axis Surplus Ins. Co.</u>, No. 06-11400, 2008 WL 1930540, at *3-4 (E.D. La. Apr. 29, 2008) (citing <u>Dixie Mill</u>, 168 F.R.D. at 556; <u>Smith</u>, 513 So. 2d at 1145; <u>Merhige v. Gubbles</u>, 657 So. 2d 1098, 1101 (La. App. 4th Cir. 2005); <u>Stumpf v. Stumpf</u>, 613 So. 2d 683, 685 (La. App. 5th Cir. 1993)); <u>Williams Land Co., LLC v. BellSouth Telecomms., Inc.</u>, No. 02-1628, 2005 WL 940564, at *2 (E.D. La. Apr. 14, 2005).

This kind of waiver occurs only when the party allegedly waiving the privilege has "'committed himself to a course of action that will require the disclosure of a privileged communication.'" Stumpf, 613 So. 2d at 685 (quoting Smith, 513 So. 2d at 1146) (emphasis added). A finding of waiver must be based on an affirmative act by the privilege holder that creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself. Smith, 513 So. 2d at 1143 (citations omitted); accord McNeely v. Bd. of River Port Pilot Comm'rs, 534 So. 2d 1255, 1255-56 (La. 1988); State v. A.D.L., 92 So. 3d 989, 992 (La. App. 3d Cir. 2012).

The parties agree that the burden to establish at-issue waiver of a privilege is upon the party who asserts waiver. United States v. Newell, 315 F.3d 510, 525 (5th Cir. 2002); In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001); Hodges, Grant & Kaufman v. United States, 768 F.2d 719, 721 (5th Cir. 1985); Ingraham v. Planet Beach Franchising Corp., No. 07-3555, 2009 WL 1076717, at *1 (E.D. La. Apr. 17, 2009); Kiln Underwriting Ltd. v. Jesuit High Sch., No. 06-04350, 2008 WL 108787, at *4-5 (E.D. La. Jan. 9, 2008); see Ascension Sch. Employees Credit Union v. Provost, Salter, Harper & Alford L.L.C., 916 So. 2d 252, 260 (La. App. 1st Cir. 2005) (trial court erred in granting defendant accounting firm's exception of peremption when defendant provided

13

"no proof" that plaintiff knew or should have known of any wrongdoing more than one year before plaintiff requested accountant review panel).

The Pailet Parties argue that, once the burden has shifted to the Barrack Parties under the peremption analysis to prove that they did <u>not</u> know of the alleged malpractice before July 3, 2011, the Barrack Parties <u>must</u> draw upon their privileged communications with attorneys and accountants to carry that burden. Therefore, the Pailet Parties contend that the Barrack Parties themselves have placed at issue the date of their discovery of the alleged malpractice and that the Barrack Parties will inevitably be forced to reveal privileged communications to prove when they knew of the alleged errors. The Pailet Parties have attached to their motion excerpts from the depositions of Carlie and Dr. Barrack, which the Pailet Parties contend carry their burden to show that the Barrack Parties placed at issue and waived their privileges as to all communications relevant to the subject of the date of their knowledge.

As to the Pailet Parties' argument regarding the burden of proof on the peremption exception, I find that prescription is <u>not</u> evident on the face of the Barrack Parties' request for an Accountant Review Panel and that the burden therefore does <u>not</u> shift to the Barrack Parties to prove that they did not know of the alleged malpractice before July 3, 2011. The request for an Accountant Review Panel states that the errors were discovered "in 2011." On its face, this does <u>not</u> indicate that the discovery occurred

14

before the peremptive date of July 3, 2011.  Although the statement leaves open a possibility that the discovery occurred before July 3, 2011, it is equally possible that the discovery occurred after that date.  Because the burden of proof does not shift to the Barrack Parties in these circumstances, the Pailet Parties retain the burden of proof at trial of their exception.

Generally, in the judicial decisions that my research has located where the burden of proof on an exception of prescription shifted to the plaintiff, the relevant dates were specifically alleged in the petition.  See, e.g., Green, 2012 WL 5507286, at *9 (Plaintiffs sued their insurance agent in 2011, alleging that he had failed to procure for them the cheapest available insurance policies on two residences that they had acquired in 1991 and 2006.  Because peremption of claims against insurance agents normally begins when the insured buys the policy, the claims were perempted on the face of the complaint and plaintiffs bore the burden to show that they were not perempted.); Rando, 16 So. 3d at 1083 (Defendant contractor asserted the statutory defense of 10-year peremption to plaintiff's personal injury lawsuit arising out of his exposure to asbestos while working for defendant on an immovable more than 10 years before suit was filed.  Because the lawsuit was perempted on its face, the burden shifted to plaintiff to show why a statutory exception to the 10-year peremption applied to preserve his claim.); Smart v. Vazquez, 119 So. 3d 901, 904-05 (La. App. 4th Cir. 2013), writ denied, 125 So. 3d 452 (La. 2013)

(Former client filed a legal malpractice action against attorneys who had allowed his medical malpractice claim to prescribe when they failed to pay a filing fee to the Patients Compensation Fund by the deadline.  Because the petition was filed more than three years after that deadline, plaintiff's claim was perempted on the face of the pleadings and the burden shifted to him to show that it was not perempted.); Hammond ex rel. Estate of Tillman v. St. Francis Med. Ctr., Inc., 38 So. 3d 1270, 1275 (La. App. 2d Cir. 2010) (Medical malpractice plaintiff bore burden of showing that action had not prescribed when petition alleged specific dates of medical treatment, which were more than one year before petition was filed, but failed to allege that she had discovered the alleged errors less than one year before the filing date.).  The Barrack Parties therefore do not bear the burden of proof to show when they discovered the alleged errors.

In addition, I find that the Pailet Parties have not carried their evidentiary burden to show that the Barrack Parties waived their privileges by placing their knowledge of the discovery date at issue.  On the contrary, the Pailet Parties have placed the date at issue by raising the exception of peremption.  The Barrack Parties' mere denial of the Pailet Parties' affirmative defense does not mean that the Barrack Parties have committed themselves to a course of action that will require them to disclose privileged communications.  "'To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations.'"

<u>Ward v. Freeman</u>, 854 F.2d 780, 789 (5th Cir. 1988) (quoting <u>Lorenz v. Valley Forge Ins.</u> <u>Co.</u>, 815 F.2d 1095, 1098 (7th Cir. 1987)); <u>see id.</u> (Defendant "was not the first party to inject reliance on advice of counsel into the trial. The plaintiffs first argued that the advice given by [defendant's] attorneys to the defendants . . . went straight to the crucial issue of whether the allegedly fraudulent decisions were made with scienter. [Defendant] had no choice but to negate the proof [of its privileged communications, whose disclosure to plaintiffs had been erroneously compelled by the trial court] by showing it acted in good faith and without any knowledge of an evil plot to defraud shareholders." "[W]e do not see how [defendant] can be said to have waived its privilege when it was plaintiffs who exploited the attorney-client communications in order to attempt to prove their claims." "[W]e find that [defendant's] use of [its privileged] communications to rebut the plaintiffs' fraud allegations similarly grew out of an issue injected into the trial by the plaintiffs.").

It is the Pailet Parties' burden to prove that the Barrack Parties knew or should have known of the alleged malpractice before July 3, 2011. The evidence that the Pailet Parties have submitted is insufficient to show that the Barrack Parties have placed at issue the date of their knowledge of the alleged errors. The evidence consists of e-mails and deposition excerpts indicating that, after the Barrack Parties hired Stone Carlie to prepare their tax returns, Carlie and Schwager raised questions about some of the prior

17

tax treatment and that the Barrack Parties prudently hired attorneys in March and April 2011 to evaluate these questions and advise Stone Carlie and the Barrack Parties about tax issues.

The Pailet Parties allege conclusorily that Stone Carlie and the Barrack Parties' attorneys concluded as early as March 2011 and no later than July 3, 2011, that the Pailet Parties had made significant errors in preparing the Barrack Parties' previous tax returns. However, the deposition testimony of Carlie, Schwager and Dr. Barrack and the other exhibits that the Pailet Parties have submitted do not support these allegations.

The evidence shows that, during the early part of Stone Carlie's engagement, Schwager asked questions about past tax treatment for the purpose of understanding that treatment, so that Stone Carlie could prepare the 2010 tax returns consistently with past returns.  After the 2010 returns were finished in mid-April 2011, the evidence indicates that the accountants and tax lawyers undertook a review of the past tax returns and other documents that the Pailet Parties had provided.  As Dr. Barrack testified, various questions about the Barrack Parties' legal and tax situations arose during these reviews, and the Barracks authorized their advisors to investigate and evaluate further in an effort to reach conclusions and make recommendations about a future course of action. Nothing in the evidence submitted contradicts Dr. Barrack's testimony, which is not inconsistent with the documents reviewed in camera, that no detailed analysis was

18

undertaken and no conclusions were reached about any accounting errors until after Whisenant was hired and finished his in-depth forensic accounting analysis in August 2011.  His results were first reported to the Barracks Parties at that time and they then sought additional professional advice about how to proceed with regard to those results. The Barrack Parties acted prudently in conducting a full evaluation of these complex and highly technical issues before reaching conclusions concerning the serious allegations they ultimately leveled.  The Pailet Parties have failed to carry their evidentiary burden to show that the Barrack Parties have placed at issue and will inevitably be forced to draw upon privileged communications to prove the date when they discovered enough facts to put them on notice of their claims.

        The facts in this case are similar to those in L.S. Huckabay, M.D. Memorial Hospital, Inc., 843 So. 2d at 1186.  The court held in that case that the plaintiff hospital's claims against its accounting firm had not been perempted by constructive knowledge while the hospital's consultant investigated the possibility that defendant had made errors in preparing the hospital's cost reports for 1992 and 1993.  McKay, the consultant, eventually found that errors in the reports had deprived plaintiff of the maximum possible Medicaid reimbursements.  Hospital administrators first met with McKay in April 1994, when he told them that he "suspected . . . that the calculation of the . . . reimbursement might be an issue, but he did not know for sure until he had access to the relevant

documents and could calculate the numbers." Id. at 1192 (emphasis added).  The hospital hired McKay to review the cost reports in May 1994.  He received defendant's working papers in July 1994.  When he finished his analysis in November 1994, he notified hospital administrators of his findings and conclusion that plaintiff was eligible to obtain additional Medicaid reimbursements, which it eventually received.

The hospital sued its former accounting firm in June 1995 to recover its costs of discovering the accounting errors and obtaining the reimbursements.  Defendant filed an exception of prescription, arguing that plaintiff had sufficient facts no later than May 1994 when it hired McKay that put it on notice of its claims and that the claims were perempted because the lawsuit was not filed within one year of that date.  The court rejected the argument, finding that prescription began to run in November 1994 when McKay first revealed his analysis to hospital administrators.  "Prior to that time, there remained uncertainty in the minds of the Hospital's decision-makers as to whether McKay would recover additional reimbursement.  At the time McKay made his presentation to [in May 1994], it was not a foregone conclusion that his review would yield money for the Hospital." Id. at 1193 (emphasis added).  The evidence showed that the hospital's administrators did not have high expectations when they hired McKay that his review would lead to additional reimbursements.  "It was not unreasonable for the Hospital to await the results of McKay's review before bringing suit" when none of its

administrators had either expertise regarding the Medicaid rules or enough accounting experience to analyze the cost reports.  Id. at 1193-94.  "The Hospital did not realize it was owed additional [Medicaid] money until McKay finished his analysis of the cost reports prepared by [defendant]. . . .  [P]rescription did not commence when McKay made his presentation to the Hospital or when" he signed the contract with plaintiff.  Id. at 1195 (emphasis added).  "[T]he Hospital would not have known that [defendant] had not garnered the maximum reimbursement until McKay could establish it."  Id.; see also id. at 1194-95 (citing Harvey v. Dixie Graphics, Inc., 593 So. 2d 351, 354-55 (La. 1992)) (In Harvey, plaintiff bought a company called HPI from Dixie, then quickly resold HPI to a third party with a warranty.  Harvey alleged that the defendant accounting firm had understated HPI's income tax liability in the tax returns it prepared during Dixie's ownership of HPI, upon which Harvey relied in making the purchase and resale.  The Second Circuit explained that the Louisiana Supreme Court "in Harvey did not rule that prescription commenced when Harvey learned from his vendee [after the resale] that the IRS was auditing HPI and was proposing adjustments that would result in greater tax liability for Harvey," but prescription began to run four months later "when an IRS agent told Harvey's own accountant and attorney that the tax returns had been prepared incorrectly.  At that time, Harvey knew of the [defendant's] negligence . . . .") (emphasis added).

21

Under these principles, the Pailet Parties have failed to produce evidence sufficient to show that the Barrack Parties intend to prove the date of their discovery of the alleged malpractice through disclosure of the withheld, privileged materials.

One purpose of my in camera review of the withheld documents was to assure that the materials are not so inconsistent with Dr. Barrack's testimony and the other evidence that the Barrack Parties are abusing the claimed privileges in some way or that some exception, such as the crime-fraud exception, might apply to pierce the privileges. See Smith, 513 So. 2d at 1145 (quoting United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir. 1942)) ("'the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; . . . it should not furnish one side with what may be false evidence and deprive the other of the means of detecting the imposition.'").  I find nothing in the withheld materials to support any such exception.

It is clear from the evidence that the Barrack Parties were confronted with a highly complex accounting, tax and legal situation.  They did not draw hasty conclusions based on insufficient facts about any accounting errors by the Pailet Parties.  Instead, they prudently undertook an in-depth professional investigation of the questions that arose, which amassed the necessary information and culminated finally in findings that would put a reasonable person on notice that he had a claim for accountant malpractice.  This process of discovering facts, evaluating complex issues and seeking professional

opinions based on sufficient analysis is exactly the process that the attorney-client and accountant-client privileges are designed to foster by protecting confidential communications from compelled disclosure.

B.     No Waiver Based on Previous Partial Disclosure of Privileged Documents
        or Failure to Comply with a Court Order

In their original memorandum, the Pailet Parties also argued that the Barrack Parties have waived their privileges by a previous partial disclosure of some privileged documents and by failing to provide discovery responses and a privilege log by September 11, 2013, which the Pailet Parties allege was previously ordered by the court. Record Doc. No. 16.  Both of these arguments lack merit.

First, to the extent that counsel for the Barrack Parties inadvertently produced privileged documents to the Pailet Parties, counsel appropriately used the procedures of Fed. R. Civ. P. 26(b)(5)(B) to retrieve those documents and preserve their privileged nature.  Second, I find that the Barrack Parties did not violate any court order and should not be subject to some sort of sanction resulting in any loss of privilege.  They were not ordered to produce a supplemental privilege log by September 11, 2013, and they did not produce responsive documents after the September 11, 2013 court-ordered deadline in any significant fashion that caused prejudice to the Pailet Parties.

In sum, I find no basis on the current record to conclude that the Barrack Parties have waived their attorney-client and/or accountant-client privileges. Accordingly, the motion to compel and for sanctions is DENIED.

New Orleans, Louisiana, this _____23rd_____ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24